JACOBS ET AL., APPELLEES, *v.* COOK ET AL., APPELLANTS.

(No. 1008—Decided June 25, 1953.)

*Mr. Sol Goodman,* for appellees.
*Messrs. Sohngen, Parrish, Beeler & Egbert,* for appellants.

*Per Curiam.* On June 9, 1952, upon the filing of the original petition, the Common Pleas Court issued a temporary injunction, as prayed for therein, enjoining defendants, Andrew B. Cook and Russell P. Sick, from taking any action which would bring about the discharge of plaintiffs and the class of employees they represented. Such order was served upon the defendants on the morning of June 10, 1952.

After trial on an affidavit filed in the original case, the defendants, appellants herein, were adjudged guilty of contempt for doing what had been prohibited by the injunction. This appeal is from that judgment.

All the plaintiffs except Local 1190 (U.A.W.-C.I.O.) are individuals, who, together with the individual defendants, were employees of the Hamilton plant of Clearing Machine Corporation, and members of an independent union, having a duly certified collective bargaining agreement with the company, the plaintiff Jacobs having been president of the independent union

and the defendants, Cook and Sick, having been respectively the financial and recording secretaries thereof.

In general, the original petition alleges that by proper procedure under its constitution, the membership of the independent union voted to disorganize and affiliate with the International U. A. W.-C. I. O., so that Local 1190 has succeeded by assignment to all the assets of the independent union, including the collective bargaining agreement, and now stands in the position of sole bargaining agent for all employees of the corporation, and entitled to assume all the rights and duties previously exercised by the independent union.

The petition goes on to charge the two defendants, as individuals, with usurping those prerogatives and attempting to function as they did in their respective positions in the past as officials of the independent union, in representing the employees, and particularly with reference to the collection of dues under the contract, which provided for a closed shop and a procedure for procuring the discharge of employees who failed to keep up their dues.

The record discloses that on June 4, 1952, the defendants, acting as officials of the independent union and in conjunction with the corporation, as provided by the contract, had posted upon the bulletin board a notice of and to delinquents in the payment of dues to the independent union.

On June 11, 1952, the defendants, upon advice of counsel, prepared the notice provided for by Article III, Section 7 of the constitution of the independent union, and on June 12, 1952, delivered a copy of such notice to the plaintiff Jacobs.

Exhibit 4, the notice delivered to Jacobs, is as follows:

"Albert Jacobs

"Hamilton, Ohio, June 11, 1952.

"Pursuant to Article III, Section 7, you are hereby notified by the financial secretary of the Hamilton Thomas employees union (Clearing Machine Corporation Workers Union), that as a suspended member you shall be reinstated only upon payment of all arrears to date and a reinstatement fee of $1. This must be paid within five (5) days after receipt of this notice.

"Andrew B. Cook,
"Fin. Sec."

Article III of the independent union's constitution, sections six, seven and eight are:

"Section 6. Members who are in arrears in payment of dues or assessments for two consecutive monthly meetings shall stand automatically suspended from all rights and privileges of membership, except in cases of sickness, accident or valid reason acceptable to the Union.

"Section 7. Suspended members shall be reinstated only upon payment of all arrears to date and reinstatement fee of one ($1.00) dollars. Must be paid within five (5) days after notification by financial secretary, or company will be notified as provided for in contract.

"Section 8. Notices containing the names of all members, who by word of the financial secretary, indicates the possibility of being delinquent two (2) consecutive months, shall be posted on union bulletin board not less than five (5) days prior to next regular meeting."

Plaintiffs claim that the preparation and service of the above notice constituted a violation of the prohibition of the injunction, in that it was a necessary step, prerequisite under the independent union's con-

stitution, before request upon the corporation for a discharge for nonpayment of dues.

The record discloses no further act done by either or both defendants, either as individuals or officials of the independent union, in connection with the discharge of Jacobs.

The record reveals that on July 7, 1952, defendant Cook, starting a vacation period and entering a hospital, turned his records over to one Humphries, chairman of the shop committee, who normally functioned as financial secretary during the absence of that official. Humphries, having previous knowledge of Jacobs' delinquency by reason of critical discussion thereof among the employees, learned from the records that Jacobs had been served with the five-day notice and of his disregard thereof, making him vulnerable to discharge.

On July 8, 1952, following a regular monthly meeting between the shop committee of the independent union and officials of the corporation, and after the conclusion of the meeting, Humphries delivered to the corporation a request for Jacobs' dismissal under the terms of the contract, in the following form:

"July 8, 1952

"This is a formal request by the union to the company for the release of Albert C. Jacobs, who we certify to be more than two monthly meetings delinquent and having failed to tender periodic dues, or resultant reinstatement has automatically suffered loss of his membership in this union. The committee for the union request compliance to the terms of our agreement, immediately, in regards to Section One (D), 1.

"Roy Humphries
"Edward Hendrickson
"Leo S. Winnefeld
"J. G. Wainscott."

After consultation and upon advice of counsel, the corporation gave written notice to plaintiff Jacobs of termination of his employment.

Humphries frankly testified that neither he nor his committee discussed with these defendants or collaborated with them in any way concerning their intended action, but purposely concealed it from them and assumed to request the dismissal of Jacobs upon their belief in a right to do so, neither they nor the independent union being under any restraining order of court. There is no evidence in the record of either of these defendants conspiring with any person or persons to violate the temporary injunction.

Upon this state of the record, the court made the following finding:

"(1) That on June 9, 1952, this court issued an order temporarily restraining the defendants and each of them from taking any action which would bring about the discharge of plaintiffs, and the class of employees of Clearing Machine Corporation, which plaintiffs represent.

"(2) That said restraining order was duly served upon the defendants on the morning of June 10, 1952.

"(3) That on June 11th, 1952, defendants Andrew B. Cook and Russell P. Sick, together collaborated in preparing a written notice which is an exhibit and evidence in this cause, wherein plaintiff Albert C. Jacobs was advised of his delinquency in dues, and that under the constitution and regulations, unless he paid the dues, and obtained his reinstatement, that the company would be notified.

"(4) The court finds that said notice was required under the constitution and regulations before the company could be notified of his delinquency in dues.

"(5) The court finds that on or about July 7th, the defendant Andrew B. Cook turned over certain books

and records showing the delinquency in dues of said Albert C. Jacobs, to the defendant Roy Humphries.

"(6) The court finds that on July 8th, 1952, the defendant Russell P. Sick, along with other defendants, other than the defendant Andrew B. Cook, attended a meeting with the officers of Clearing Machine Corporation, and that after adjournment of the meeting a notice in writing was served on the Clearing Machine Corporation requesting the discharge of Albert C. Jacobs.

"(7) The court further finds that a copy of said notice was handed to the defendant, Russell P. Sick, as recording secretary, for him to keep as part of the records in his custody.

"(8) The court finds that as a direct result of the preparation and service of the first notice above referred to on Albert C. Jacobs, and the turning over of the books and records to Roy Humphries, and the serving of the notice on the company, that Albert C. Jacobs was discharged from his employment in direct violation of the provisions of the restraining order herein."

Finding No. 3 is based on exhibit No. 4 in the record, which is shown on its face to be merely a notice advising plaintiff Jacobs of a delinquency in dues, and not violative of the letter or spirit of the temporary injunction. There is no evidence to justify the additional finding "and that under the constitution and regulations, unless he paid the dues, and obtained his reinstatement, that the company would be notified," which, while even if construed as a required step in bringing about plaintiff Jacobs' discharge, still falls short of that, and, hence, is not violative of the injunction.

There is nothing contained in findings No. 4 through No. 7 to show any contumacious act or conduct on the

part of defendants here. The notice referred to in finding No. 6 is shown by the record to have been the act of other persons.

Finding No. 8 refers to acts of these defendants not contumacious in character and continues as a composite finding on acts and things done by other persons, including the members of the shop committee of the independent union—various and company officials and on advice of counsel, which cannot be the basis for condemning these defendants.

Without elaboration, this court concludes this case to be one of civil contempt, so that it was not error to call a defendant as on cross-examination.

From the foregoing, it appears to this court that there is no substantial evidence to sustain the findings of the trial court, upon which its judgment of guilty of contempt is based, and the judgment is, therefore, reversed.

*Judgment reversed.*

MATTHEWS, P. J., ROSS and HILDEBRANT, JJ., concur.